UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES ELLIOTT,

    Plaintiff,

    v.

MONROE CORRECTIONAL COMPLEX,

    Defendant.

Case No. C06-0474RSL

ORDER GRANTING
MOTION TO DISMISS

    This matter comes before the Court on defendant's motion for summary judgment. (Dkt. #16). Defendant Monroe Correctional Complex asks the Court to grant its motion for summary judgment based upon the alleged failure of plaintiff James Elliott to exhaust his administrative remedies prior to pursuing this litigation. Plaintiff asserts that he is exempt from the exhaustion requirement because of his disability. For the reasons stated herein, defendant's motion is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

    Plaintiff began his incarceration on May 19, 2005 after being convicted of "Rape of a Child in the Second Degree and Child Molestation." (Dkt. #16 at p. 2). Plaintiff's sentence included a minimum term of 10 years and 11 months with the Department of Corrections, with a maximum penalty of life imprisonment. His current release date is October 28, 2013.

ORDER GRANTING
MOTION TO DISMISS - 1

Plaintiff has cerebral palsy.  According to his educational records, plaintiff can read at a third grade level.  Declaration of Diana Elliott (Dkt. #20), Ex. A.

**A.   Defendant's Grievance Procedure**

Defendant utilizes the Washington Offender Grievance Program ("OGP") to process inmate complaints.  The OGP allows an inmate to challenge certain aspects of prison life including: "1) Department of Corrections institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions."  Declaration of Eugene Romano, (Dkt. #16-2) ("Romano Decl.") at ¶ 4.  Inmates may not file a grievance regarding "administrative segregation placement or retention" or "classifications/unit team decisions."  Id.

The OGP has four levels.  The higher levels represent appeals of grievances.  Also, some complaints may be initiated at the higher levels.  For example, a prisoner may appeal a Level I grievance to Level II, and certain types of complaints may be initiated at Level II, "with the prison superintendent being the respondent."  Romano Decl. at ¶ 6.  Prisoners may access information about the OGP in their orientation manual and the law library.  The manual sets forth general information about filing grievances but does not describe the appellate process.  An inmate may obtain more details from the materials in the prison law library or through an appointment with the grievance coordinator in the prison.

**B.   Plaintiff's History**

Plaintiff began his prison term at the Monroe Correctional Complex on July 18, 2005.  He was placed in the general population.  As of April 18, 2006, he had filed twenty grievances through the OGP.  Some of the complaints relate to the claims in this case, including a challenge to defendant's alleged failure to replace his orthopedic shoes and his placement in administrative segregation.  Sixteen of plaintiff's complaints remained at Level 0 or the informal complaint

ORDER GRANTING
MOTION TO DISMISS - 2

level. Four complaints rose to Level I or formal complaint status. The prison's grievance coordinator assisted plaintiff with two grievances dated March 2, 2006 regarding his shoes and administrative segregation.

On April 4, 2006, plaintiff filed suit in this Court alleging discrimination, lack of reasonable accommodation and "physical hardship." Complaint at p. 4. He alleges that his placement in the general population of inmates, and his occasional placement in administrative segregation, constituted discrimination and evidence defendant's failure to provide him with reasonable accommodation. Plaintiff also asserts that defendant inflicted physical hardship upon him by depriving plaintiff of nutritional supplements and orthopedic shoes.

## II. DISCUSSION

### A. Applicable Standards

Defendant moves for summary judgment based upon plaintiff's alleged failure to exhaust his administrative remedies. However, the proper form for this defense is a motion to dismiss. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). In its determination, the court "may look beyond the pleadings and decide disputed issues of fact." Id. If the court concludes that plaintiff failed to exhaust the available remedies, then the court should dismiss the claim without prejudice. Id. at 1120. Accordingly, the Court proceeds to evaluate defendant's arguments under the described dismissal standard as opposed to a summary judgment standard.

### B. Analysis

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust any available administrative remedies prior to filing suit.[1] Civil Rights of

---

[1] Plaintiff relies upon Siggers-El v. Barlow, 433 F. Supp.2d 811 (E.D. Mich. 2006), and Sallier v. Scott, 151 F. Supp.2d 836 (E.D. Mich. 2001), to question the constitutionality of the PLRA exhaustion requirement. However, each case is distinguishable upon its facts. In

ORDER GRANTING
MOTION TO DISMISS - 3

Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a). The Supreme Court has identified two functions of the exhaustion requirement under the PLRA. First, the requirement minimizes judicial interference with prison management while giving the prison an opportunity to correct the situation before litigation commences. Woodford v. Ngo, --- U.S. ---, 126 S. Ct. 2378, 2387 (2006) (citing Porter v. Nussle, 534 U.S. 516, 525 (2002)). Second, exhaustion aids in "reduc[ing] the quantity and improv[ing] the quality of prisoner suits." Id. (internal citation and quotation omitted). In light of these goals, the Supreme Court interpreted the PLRA to require "proper exhaustion" of available administrative remedies. Woodford, 126 S.Ct. at 2387. As a practical matter, this means that an inmate must exhaust all of the appellate steps in a complaint process and comply "with an agency's deadlines and other critical procedural rules[.]" Id. at 2385-86.

Although plaintiff filed grievances regarding defendant's alleged failure to provide plaintiff with vitamins and orthopedic shoes, plaintiff neglected to exhaust all four levels of the system. The request for orthopedic shoes rose to a Level I complaint and his request for vitamins did not progress beyond Level 0.

On December 13, 2006, the Court ordered the parties to provide supplemental memoranda regarding whether defendant's grievance program constitutes an "available" remedy through which plaintiff could contest his placement in the general population and in administrative segregation. See Booth v. Churner, 532 U.S. 731, 736 (2001); Brown v. Valoff, 422 F.3d 926, 935 n.10 (9th Cir. 2004). In response, defendant provided a declaration from a Custody Unit Supervisor at the Monroe Correctional Complex who states that plaintiff had the

---

Siggers-El, the court held that a provision of the PLRA, which required the plaintiff to show that he suffered physical harm prior to bringing an action for mental or emotional injury, was unconstitutional. Siggers-El, 433 F. Supp.2d at 816. This holding does not address whether the exhaustion requirement applies in this case. Similarly, Sallier, which addressed the constitutionality of the PLRA provisions relating to attorney's fees, is inapplicable here. Sallier, 151 F. Supp.2d at 839.

ORDER GRANTING
MOTION TO DISMISS - 4

right to appeal both decisions to the Superintendent.  Declaration of Tracy Daniel, (Dkt. #32) at ¶¶ 4, 8.  The inmate's right to appeal is explained to them by their counselor and custody unit supervisor.  The information is also contained in their individual handbooks, posted in the prison, and available for review in the prison law library.  Id. at ¶ 5.  Nevertheless, plaintiff never filed an appeal to contest his placement in the general prison population or in administrative segregation.[2]  Id. at ¶¶ 6, 8.  Therefore, plaintiff did not exhaust his administrative remedies regarding any of the claims he seeks to pursue in this case.

Plaintiff does not dispute that the exhaustion requirement applies or that he failed to exhaust his administrative remedies.  Instead, he argues that he should be exempt from the exhaustion requirement based on his cerebral palsy.  He relies on authority from the Second Circuit which recognizes a "special circumstances" exception to the PLRA.  Hemphill v. New York, 380 F.3d 680, 689 (2nd Cir. 2004):

> '[T]here are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified.'

Id. (quoting Giano v. Goord, 380 F.3d 670, 676 (2nd Cir. 2004)).  Under this rule, the Second Circuit excused non-exhaustion where defendant's actions reasonably deterred the inmate from exhausting his remedies and where an inmate relied on a reasonable interpretation of the grievance procedures.  Hemphill, 380 F.3d at 690.  However, special circumstances may be irrelevant where the plaintiff demonstrates that he can overcome the alleged impediment.  See Sosa v. Cleaver, No. 3:03CV1707DJSTPS, 2005 WL 1205119, at *3 (D. Conn. May 18, 2005) (rejecting the argument that the prison's failure to provide plaintiff with grievance regulations in Spanish constituted a special circumstance since plaintiff previously filed grievances in English).

---

[2] Despite the Court's invitation to do so, plaintiff did not file a response to defendant's supplemental filings.

ORDER GRANTING
MOTION TO DISMISS - 5

The Ninth Circuit Court of Appeals has not adopted a special circumstances exception. However, even if the Court recognized that exception, the evidence fails to give rise to a special circumstance.[3]  There is no evidence that defendant misled plaintiff or in any way precluded him from exhausting the appeals process.  Plaintiff also argues that the exhaustion requirement is too rigid for a person of limited education and physical ability.  In Woodford, the Supreme Court rejected a similar argument in light of the "relative simplicity of prison grievance systems . . . as well as the fact that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements."  Id. at 2393.  Plaintiff distinguishes his circumstance based upon his alleged disability.  He claims that defendant failed to provide a reasonable accommodation as required by the Americans with Disabilities Act ("ADA").  42 U.S.C. § 12131 *et seq*.  Plaintiff fails to identify any specific accommodations that defendant should have provided.  Instead, plaintiff vaguely alleges that defendant knew of plaintiff's limitations and improperly "took no action."  Plaintiff's Response at 8.  The record does not support plaintiff's assertion.  Instead, defendant provided both a special needs counselor and a grievance coordinator to assist him.  Also, the grievance coordinator specifically assisted plaintiff with a grievance regarding the loss of his orthopedic shoes and his placement in administrative segregation.  Plaintiff never informed any prison staff that he was unable to understand or navigate the process.  Nor has he provided any evidence to show that he was unable to understand the process.  In fact, plaintiff had a sufficient understanding of the procedures to file sixteen Level 0 grievances and four Level I formal complaints.  However, he failed to exhaust his grievances even when assisted by the grievance coordinator.  As the court found in Sosa, plaintiff's grievance record demonstrates that he

---

[3] Despite its obvious evidentiary shortcomings, the Court considered the purported expert declaration from plaintiff's counsel.  In it, she states that she is a former teacher and has opined on the words in the prison's manual that a typical third grader cannot read or comprehend.  However, as set forth above, plaintiff has not provided any evidence that he was unable to understand the manual or the grievance procedure.

ORDER GRANTING
MOTION TO DISMISS - 6

possessed the requisite skill to navigate the OGP despite his disability. Therefore, even if a special circumstances exception was available, it would not excuse plaintiff's failure to exhaust his administrative remedies.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion to dismiss (Dkt. #16) and dismisses plaintiff's claims without prejudice.

DATED this 23rd day of January, 2007.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING
MOTION TO DISMISS - 7